### DAVIS v. GALLAGHER et al.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

1. STEPFATHER—IN LOCO PARENTIS.
     A stepfather does not stand in loco parentis to a stepson who has reached his majority and lives separately from him.

2. SAME—LIABILITY FOR SERVICES.
     Plaintiff, after reaching his majority, labored on his stepfather's farm at his request. Prior to the latter's death he stated to witnesses that he was indebted to his stepson, and intended to compensate him. *Held* sufficient to warrant a finding for compensation for services rendered.

Appeal from judgment on report of referee.

Action by Dan Davis against John W. Gallagher and others. From a judgment entered on a report of a referee in favor of the plaintiff for $461.19 damages and $736.44 costs, defendants appeal. Affirmed.

The first trial was before H. E. Nichols, Esq., referee, whose judgment was affirmed by the general term (55 Hun, 593, 9 N. Y. Supp. 11); and the judg-

ment of affirmance was reversed by the court of appeals (124 N. Y. 487, 26 N. E. 1045) on the ground of an erroneous ruling upon a question arising under section 829 of the Code of Civil Procedure. The original claim presented by the plaintiff against the executors amounted to $2,085. The report of the referee now brought in review only allowed the plaintiff two items, to wit, for services from April, 1879, to March, 1882, at $20 per month; and, second, for 22 tons of hay, at $6 per ton; and he offset or credited as partial payment upon the claims certain items admitted in the plaintiff's complaint, amounting to $554.20, and found a balance in favor of the plaintiff for the sum of $279, and interest thereon. At the time James L. Price, the deceased, made his second venture in matrimony, he had a daughter, who is the wife of John W. Gallagher, one of the administrators; and his second wife was a widow, having two children,—one the plaintiff, and the other Mary E. Davis. At the time of the marriage the plaintiff was about eight years of age, and Mary was about six years of age; and apparently they had in their own right about $979 in money, which Price borrowed, and for which he gave notes, and he entered into an agreement to provide for the children, respectively, until they came of age, for the interest on such money. After they arrived of age he entered into a settlement, paying to Mary the amount due her in money, and arranged to deed a small piece of land to the plaintiff for $1,000, in settlement of money theretofore borrowed, and certain services which had accrued against him in favor of the plaintiff. That settlement took place about November 5, 1876, at the office of J. W. Fenton, Esq.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

J. W. Shea, for appellants.

T. W. Skinner, W. A. Poucher, and L. C. Rowe, for respondent.

HARDIN, P. J. Because the plaintiff was allowed to recover for his services rendered for the deceased from the 17th of April, 1879, to the 19th of March, 1882, at $20 per month, the appellants allege that an error was committed. They allege that the relation of loco parentis was sustained between the deceased and the plaintiff during that period of time. Whether such relation existed was a question of fact, to be determined upon all the evidence adduced before the referee. Plaintiff, after he came of age, married, and had a settlement for himself and wife; and the deceased did not stand in the relation of loco parentis at the time the services were performed for which the referee has allowed. Williams v. Hutchinson, 3 N. Y. 312; Gall v. Gall, 27 App. Div. 173, 50 N. Y. Supp. 563; Robinson v. Raynor, 28 N. Y. 494; Reynolds v. Robinson, 64 N. Y. 589.

It seems that, early in the association of the deceased with his new wife and her children, he entered into a business arrangement whereby their property was made to contribute to their support and education until they were 21 years of age, and that after the plaintiff reached his majority he had a settlement for his work up to a certain time; and then he married, and had a family of his own, and maintained a separate residence, prior to the time for which he recovered the value of his services rendered to the deceased. The plaintiff was born November 19, 1853, and came of age November 19, 1874. He was married January 17, 1875, and, with his wife, began keeping house in a tenant house on Price's farm, and lived there until November 5, 1879, when he and his wife moved into a house that he had built upon the Schermerhorn place, which belonged to him. The deceased had paid

the plaintiff for services performed prior to those allowed by the referee; thus recognizing the obligation on his part to compensate the plaintiff for services rendered, and thus indicating that the deceased did not understand that he stood in the position of loco parentis to the plaintiff. It seems that during the time that the services were rendered by the plaintiff the intestate was a very fleshy man, and little able to perform work upon the premises, and required the assistance of the plaintiff to oversee the other help, and to render services in the carrying on of the farm of 154 acres of land, supporting a dairy of about 25 cows. The other help was employed by the day from time to time upon the farm. It appeared that the plaintiff did general farm work, and that he did the team work, and that he worked early and late,—from 4 o'clock in the morning until sometimes 9 o'clock in the evening. The deceased admitted on several occasions that the plaintiff was faithful, and a hard-working man, and that he intended to do well for him, and on several occasions referred to his indebtedness to the plaintiff. The deceased, in a conversation held in respect to the plaintiff, said that he "told Dan that he need not be afraid,—they had land enough,—and to stay right there and work, and he would get pay for his work." To several witnesses, down to and near the close of his life, the deceased stated his indebtedness to the plaintiff, and his intention to compensate him therefor; and to some of the witnesses, that he intended to compensate him in land. We think the referee was warranted in finding, upon all the evidence disclosed, that there was an understanding between the deceased and the plaintiff that the plaintiff should receive compensation for the services performed by him at the instance and request of the deceased, and that the referee's report in that regard is sufficiently sustained by the evidence.

2. There was considerable conflict, and some confusion, in the evidence given upon the hearing in respect to the hay. There is sufficient evidence to sustain the finding of fact made by the referee in respect thereto. In April, 1879, the plaintiff was the owner and in possession of the Schermerhorn farm, which was principally used for meadow, and he continued to raise hay upon it. There was a bay in the barn. The dimensions of the bay were 24x26 feet, with 18-foot posts. Mrs. Price testifies:

"I was present at a deal between Mr. Price and Dan in relation to hay. Mr. Price asked Dan what he would take for one-half of his bay of hay in his barn. He told him. [This conversation was in 1880.] The forepart of March, Mr. Davis told him he thought he would need it all,—the whole of it,—to carry his stock through to grass. Mr. Price said, 'All, All!' There was no price fixed. Mr. Price said he could not pay him then,—not down. Dan told him he wanted enough money to buy him a cow. Mr. Price told him to go to the barn and pick him out a cow. He did so. He went to the barn and picked him out a cow. That was all that was said. It was in the dining room at Mr. Price's house. This hay was in the barn at Mr. Davis's place."

3. Numerous exceptions were taken during the progress of the trial, and are referred to by the appellants in their argument, many of them relating to matters which were not allowed by the referee; and those that pertain to the items that were allowed by the referee do not seem

to present prejudicial error requiring an interference with the report of the referee.   The report of the referee as to the damages should be sustained.

Judgment affirmed, with costs.   All concur.